## SUCCESSION OF JEAN BOZANT.

The father had sold out his business to his son, who attended to the settlement of the father's business. The son was in possession of various receipts taken for money paid, which, on their face, expressed to have been paid by the father. *Held:* That the son ought to be permitted to prove, by parol proof, that the payments had been in fact made by him, and that such evidence did not contradict the written receipts.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Livingston* and *Reynolds*, for appellant. *Lewis* and *Bermudez, M. Grivot*, and *Race* and *Foster*, for appellees. The judgment of the court was pronounced by

PRESTON, J. *Auguste Bozant* claims a large sum of money from the executor of his father, *Jean Bozant.* His claim is resisted by the executor and his co-heirs.

The deceased was an inspector of pork, which appears to have been a profitable business, and he amassed a considerable fortune. In the fall of 1844, he resigned the office, and his son was appointed in his place. He sold his stock in trade to his son, who took charge of his books and the collection of his outstanding claims, and had the winding up of his father's business. He did not open new books, but continued his accounts in his father's books. He even continued his father's and his own account with the Mechanics and Traders' Bank, indiscriminately, in the same bank book. The greatest confidence existed between them, until the death of the father, in 1849. The son was in the habit of sending the father twenty dollars a week, for his personal expenses, until his death, as proved by three or four witnesses.

An account was kept with the father, which exhibited a balance of $3519 against him. Has this account been sufficiently proved by the evidence in the case? *Ferris*, who was the clerk of the father and continued by his son, kept the account, and swears positively to its correctness. He proves the payment of most of the items to his personal knowledge. He was cashier in keeping and paying out the money which passed through his hands; and he entered the items with particularity in the books. By a long and harassing cross-examination, a few errors were discovered, amounting to as much in favor of the son as against him. He proves, that *Jean Bozant* had free and constant access to the books; was in the office every day, for a long period after he resigned, and several times examined his account. An account was rendered to him, to which he made no objection.

The testimony of this witness is corroborated by *Lyttle*, who was in the employment of the father and the son, from 1841 to 1846. In the summer of 1845, during the temporary absence of *Ferris*, he kept the books. He says, the deceased, *Jean Bozant*, "used the money of *Auguste Bozant*, as if it was his own. He means, that he used money very freely. *Auguste Bozant* kept a regular account with his father. He kept a regular set of books. The entries were made first in the day book; they were then posted into other books, to show the state of the accounts. *Mr. Jean Bozant* was very frequently in the office of his son, and had access to the books. He knows of his having examined his account in the books on one occasion, which he recollects from the fact, that he asked him to explain one of the entries." He proves, that *Auguste Bozant* was in the habit of paying the bills against his father, when approved by him.

*Jean Bozant* conversed with *Riviere*, a friend of forty years, and his endorser often and shortly before his death, concerning his affairs, and said he owed his son a large sum of money; that he could not pay him, and would have to sell a house for that purpose.

*Correjolles* attended to some business of *Bozant* shortly before his death, and was a friend and acquaintance for upwards of forty years. Two or three months before his death, he conversed with the witness about his affairs; said he owed his son money, and that he would be obliged to sell a house to pay his debts.

The account of the executor, showing but a small indebtedness of the deceased, as well as the positive testimony, induces us to think, it must have been the debt to his son, to which he referred as rendering it necessary for him to sell a house for its discharge.

*Lyttle* testifies, that he owed the deceased money, which he pressed him to pay, giving as a reason, that he did not wish to go to his son for money, as he was so largely in his debt. There are many other circumstances proved, tending to the same conclusion, that the father died indebted to his son.

A most rigorous cross-examination was resorted to, for the purpose of discrediting these witnesses or destroying the effect of their testimony. Two of them were the oldest and most confidential friends of the deceased, and the other two had been in his employment while in business, enjoyed his confidence, and, in consequence of that confidence, was continued in the employment of his son in winding up his business. Their combined testimony tends strongly to prove, that the deceased owed his son three thousand five hundred and nineteen dollars.

The latter has endeavored to establish a much larger indebtedness, and has taken many bills of exception to the exclusion of testimony which he offered in support of his claim. We think the court was too stringent in its rulings upon some points of evidence; and that some of the testimony offered and excluded, should have been received. Thus, the opponent had in his possession, and offered as evidence, accounts made out against *Jean Bozant*, and receipted by those to whom they were due. He offered to prove, that he had paid them for his father. The testimony was rejected, on the ground that it contradicted the receipts, and was inadmissible under article 2256 of the Code.

To have proved that the money had not been paid, would have contradicted the receipt; but testimony that it was paid by *A. Bozant*, though collateral to, did not contradict, the receipt, which was consistent with and supported by the proof. The testimony was peculiarly consistent with the business the son undertook, under the direction of *Jean Bozant*,—to wind up his affairs, to collect his dues, and pay his debts; a business which would necessarily result in a balance

Succession of for or against him, to be supported by the vouchers for all monies paid by him, Jean Bozant. and which were his, while in his possession, in whatever form made out. Considering this agency, the testimony did not contradict, but explained and supported the receipts.

Considering that this was a probate case, without the intervention of a jury, we think the ruling of the court might have allowed more latitude on several points of evidence. In consequence of the executor and a book-keeper employed by him, having thoroughly examined the accounts of the father and son, as kept by the latter, and having been examined much in relation to them; and having even stated several things which they contained, and especially the balance of $3519; we would have been glad to have had the material extracts from those accounts before us, although they could not have been given in evidence by the opponent, unless, perhaps. as rebutting evidence.

On the account before us, we have spent much time in endeavoring to ascertain of what items that balance was composed, and what items of the continuous account in the record do not appear in the account resulting in the balance in the books, so as to reduce the balance of the account sued upon to the same amount or less; but we have been unsuccessful, and fear that the opponent has greatly endangered a just claim, by unjustly claiming more than is due to him.

For these reasons, we consider that the account of the executor should be homologated and be discharged, upon distributing the funds of the estate according to the account. But we are of opinion, that the opponent should not be prejudiced thereby, in an ordinary suit against his co-heirs, for their shares of the true balance of the account ; and we would recommend the reference of the accounts to auditors, for the purpose of stating and simplifying them.

With this understanding, that the opposition is dismissed as in case of a nonsuit, the judgment of the district court is affirmed, with costs.

SLIDELL, J.  I concur in the decree prepared by Mr. Justice Preston, but wish to be considered as not expressing an opinion upon the probable merits of the case, as they are, in all likelihood, to be the subject of future investigation.